663 P.2d 240

STATE of Arizona, Appellee,

v.

John Joseph MARTIN, Appellant.

No. 1 CA–CR 5542.

Court of Appeals of Arizona,
Division 1, Department B.

Sept. 23, 1982.

Review Granted Dec. 7, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div. and Clifford C. Wamacks, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Bruce M. Preston, Deputy Public Defender, Phoenix, for appellant.

OPINION

MEYERSON, Judge.

Appellant John Joseph Martin was charged with and convicted of two counts

of child molestation. A.R.S. § 13–1410. The sole issue in this appeal is whether the trial judge erred by admitting into evidence prior consistent statements made by the victim to a teacher, a police officer, a detective, a psychologist, and a pediatrician. For the reasons hereinafter stated, Martin's conviction is reversed and this matter is remanded for a new trial.

The facts are as follows. The victim, Martin's step-daughter, testified to a number of sexual activities between her and Martin which began in 1979 when he married the victim's mother and which continued after the marriage. She also testified to an incident which took place on July 9, 1980—the event out of which the indictment arose. The child, eleven-years old at the time, testified that Martin touched her private parts and put her hands on his penis. On cross-examination, she testified that she never liked Martin because her relationship with her mother changed after her mother married Martin. She testified that she resented her step-father because the mother began to treat her differently after the marriage.

The victim's teacher testified that she spoke with the victim in October, 1980, and learned of a number of these incidents. The teacher's testimony mainly consisted of her recounting conversations with the victim. After the teacher contacted the child protective service office, a police officer and a detective investigated the complaint; both testified about their conversations with the victim. The police officer's testimony concerned the victim's general comments about the history of molestation and the detective testified about his conversations with the victim concerning the events of July 9 as well as other incidents. A psychologist and a pediatrician who examined the victim were permitted to testify concerning what the victim told them regarding the incidents of sexual molestation. Their testimony did not include any reference to the events of July 9. In sum, the testimony of the teacher, the detective, the police officer, the psychologist, and the pediatrician consisted of recounting the story told to them by the victim.

Martin testified and denied that he molested his step-daughter. His testimony was that the victim did not like him for a number of reasons and made up the charges against him in retaliation.

During the direct examination of the teacher, Martin made a hearsay objection when she was asked about her conversations with the victim. The state argued that the victim's credibility had been called into question and that the prior consistent statements, although hearsay, were admissible under Rule 801(d)(1)(B), Ariz.R.Evid. (hereinafter cited as Rule). The trial judge overruled the objection. A similar objection made during the direct examination of the detective was likewise overruled. Prior to the testimony of the psychologist and the pediatrician, Martin made a motion in *limine* to exclude any further testimony concerning these prior consistent statements; the motion was overruled.

Rule 801(d)(1)(B) provides:

A statement is not hearsay if (1) . . . [t]he declarant testifies at the trial . . . and is subject to cross-examination concerning the statement and the statement is . . . (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. . . .

The use of prior consistent statements for substantive purposes traditionally was barred by the hearsay rule. *See generally* 4 Wigmore, Evidence §§ 1122–33 (Chadbourn rev. 1972) (hereinafter cited as Wigmore). Nor could a witness's testimony be corroborated on direct examination with a prior consistent statement. Wigmore § 1124, at 255. The reason that prior consistent statements usually have been excluded is that the trustworthiness of the witness's story is not made more or less probable simply by the number of repetitions of it. "Evidence which merely shows the witness said the same thing on other occasions when his motive was the same does not have much probative force 'for the simple reason that mere repetition does not imply veracity.' "

4 Weinstein and Berger, Weinstein's Evidence § 801(d)(1)(B)[01] (1981) (quoting *Coltrane v. United States,* 418 F.2d 1131, 1140 (D.C.Cir.1969)).

There are, however, situations in which the witness's prior consistent statements may have probative value. "Prior consistent statements traditionally have been admissible to rebut charges of recent fabrication or improper influence or motive...." Fed.R.Evid. 801(d)(1)(B) advisory committee note, 56 F.R.D. 296 (1973). With the promulgation of the Federal Rules of Evidence in 1975, prior consistent statements were made admissible for substantive and corrobative purposes but only to rebut a charge of recent fabrication or improper influence or motive. Rule 801(d)(1)(B) is identical to the federal rule.

Courts which have held prior consistent statements to be admissible have insisted, however, that the statements must be made prior to the time the supposed motive to falsify arose. *E.g., United States v. Check,* 582 F.2d 668, 681 (2d Cir.1978); *United States v. Quinto,* 582 F.2d 224, 234 (2d Cir. 1978); *United States v. Lanier,* 578 F.2d 1246, 1255–56 (8th Cir.), *cert. denied,* 439 U.S. 856, 99 S.Ct. 169, 58 L.Ed.2d 163 (1978). *In Re the Adoption of Male Minor Child,* 1 Haw.App. 364, 619 P.2d 1092, 1098 (Ct.App. Hawaii 1980); *see also* Graham, *Prior Consistent Statements: Rule 801(d)(1)(B) of the Federal Rules of Evidence, Critique and Proposal,* 30 Hastings L.J. 575, 586–88 (1979). "A consistent statement, at a *time prior* to the existence of a fact said to indicate bias, interest, or corruption, will effectively explain away the force of the impeaching evidence; because it is thus made to appear that the statement in the form now uttered was independent of the discrediting influence." Wigmore § 1128, at 268.

For example, in *United States v. Lanier,* the defendant was charged with falsifying certain government reports. A witness testified that the defendant told her to draw certain money orders but not to deposit them. The defendant attempted to impeach the witness. Another witness was allowed to testify to prior consistent statements which the first witness made. The prior consistent statements were admitted because they were made prior to the discovery of the missing funds and before the defendant had made certain statements implicating the first witness in the loss. The court concluded that the statements were made before any motive to fabricate could have existed.

In *Lindsey v. United States,* 237 F.2d 893 (9th Cir.1956), the court reversed a conviction for statutory rape finding the trial court had erred by admitting prior consistent statements made by the victim to a psychiatrist. During cross-examination of the fifteen-year-old child, the defense introduced evidence that the victim retracted all of the allegations originally made when she first complained about the alleged crime. A psychiatrist was called by the government to rehabilitate the victim. Based on tests which he administered to her and an interview with her while she was under sodium-pentothal, he stated she was telling the truth. Although the court reversed because it found that playing the tape of the interview was prejudicial it noted that "if the original story were indeed a fabrication, it would be unreasonable to hold that motive did not exist to fabricate during the test...." *Id.* at 895.

Arizona courts also follow the general rule that to be admissible, prior consistent statements must have been made before the motive for falsification arose. In *State v. Williams,* 131 Ariz. 211, 639 P.2d 1036 (1982), the court found that a police officer who interviewed the victim of a sexual attack on the evening of the assault could testify that the victim's statements were consistent with her testimony at trial. The court noted that they were "offered to rebut an express and implied charge against her of improper motive—that she consented to the sexual intercourse, later felt shame and concocted the accusation of rape." 639 P.2d at 1039.

In *State v. Grier,* 129 Ariz. 279, 630 P.2d 575 (Ct.App.1981), a composite picture drawn by an investigating officer the day

after an alleged kidnapping and assault was held admissible as a prior consistent statement offered to rebut a charge of recent fabrication. During the trial, the only defense was one of misidentification. Cross-examination of the investigating officers was intended to raise the inference that the victim had recently fabricated her trial identification or had been improperly influenced by the police during the investigation of the crime. The composite picture, done only one day after the crime was committed, was held to be admissible to rebut those inferences.

Although our courts have not expressly stated that to be admissible prior consistent statements must be made before the motive to falsify arose, the cases unequivocally make this important distinction. *See State v. Conroy*, 131 Ariz. 528, 642 P.2d 873, 876 (Ct.App.1982) (prior consistent statements made by victim of child molestation four days after the incident admitted where victim denied at the preliminary hearing that any molestation had occurred). Thus, to be admissible under Rule 801(d)(1)(B), the prior statement must be (1) consistent with the witness's in-court testimony, (2) offered to rebut an express or implied charge of recent fabrication or improper influence or motive and (3) made prior to the time the supposed motive to falsify arose.

In this case, the prior consistent statements were offered to rebut Martin's charge that the victim didn't like him because her relationship with her mother changed after the marriage to Martin. That allegation was made during Martin's opening statement, during cross-examination of the victim, and during closing argument. The motivation for the victim to testify unfavorably about Martin arose at the time of his marriage to the victim's mother in June, 1979. Because the prior consistent statements made by the victim to the teacher, the police officer, the detective, the psychologist, and the pediatrician [1] were all made subsequent to that time they cannot be admitted pursuant to Rule 801(d)(1)(B).

Having found the trial judge erred in admitting the victim's prior consistent statements, we must consider whether the error necessitates reversal of the conviction. "The resolution of this question depends on whether there is reasonable possibility under the facts that the verdict might have been different had the error not been committed." *State v. Cruz*, 128 Ariz. 538, 541, 627 P.2d 689, 692 (1981).

The likely prejudicial effect of the cumulative introduction of the victim's prior statements was summarized by counsel for Martin this way:

What this case boils down to is that [the victim] says that one thing happened and ... Martin says that something else happened. [The victim] goes out and repeats this to her teacher, police officer, a social worker, another police officer, a psychologist, and a doctor. These people all become witnesses. And it sounds, if you don't stop to think about it, that all these people were witnesses to what happened, when they really weren't. They're only witnesses to what they were told by [the victim]. Repetition by her of her story two times or three times or nine times doesn't make it any more true than the first time that it was told.

We cannot say, beyond a reasonable doubt, *State v. McVay*, 127 Ariz. 450, 453, 622 P.2d 9, 12 (1980), that the litany of testimony all repetitious of the victim's original story did not influence the jury to convict Martin. *See United States v. Quinto*, 582 F.2d at 235 (Internal Revenue Service memorandum offered to rebut charge of improper motive of agent sufficiently prejudicial to have influenced jury and thus warrant reversal).

---

1. The state argues that the testimony by the psychologist and pediatrician was admissible under Rule 803(4) as statements made for the purpose of medical diagnosis or treatment. We need not decide this question because we conclude that even if such statements were admissible, the cumulative effect of all of the repetitious statements outweighed any probative value they might have and was prejudicial.

The state argues that any error was cured by the trial judge's instruction[2] to the jury at the close of evidence and prior to its deliberations. The judge said:

> You should not decide any issue merely by counting the number of witnesses who have testified on the opposing sides.

The United States Supreme Court has recognized that prejudicial effects cannot be completely overcome by instructions to the jury. *Bruton v. United States,* 391 U.S. 123, 129, 88 S.Ct. 1620, 1624, 20 L.Ed.2d 476, 481 (1968). The Court stated that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* at 135, 88 S.Ct. at 1627, 20 L.Ed.2d at 485. The question becomes whether the remark was "so highly prejudicial as to be incurable by the trial court's admonition." *United States v. Klein,* 546 F.2d 1259, 1263 (5th Cir.1977).

■ In weighing the forcefulness of the instruction against the degree of prejudice created by the error, *United States v. Johnson,* 618 F.2d 60, 62 (9th Cir.1980), we find that the instruction could not have overcome the prejudicial effect created by the cumulative repetition of the victim's story.

We therefore reverse Martin's conviction and remand this matter for a new trial.

GREER, Acting P.J., and KLEINSCHMIDT, J., concur.

---

**2.** The state also argues that the testimony offered by the witnesses also was admissible under Rule 404 as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." But, whenever such evidence is admitted "there is an imperative duty on the trial court to clearly instruct the jury as to the restricted and limited purpose for which such evidence is to be considered." *State v. Finley,* 85 Ariz. 327, 335, 338 P.2d 790, 796 (1959). No such instruction was given. Furthermore, Rule 404 is not an exception to the hearsay rule and, of course, the prior consistent statements are hearsay.