920 P.2d 320

**In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. JV–133607.**

**No. 1 CA–JV 96–0050.**

Court of Appeals of Arizona,
Division 1, Department E.

June 25, 1996.

Richard M. Romley, Maricopa County Attorney by Paula A. Williams, Mesa, Deputy County Attorney, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Susan G. White, Mesa, Deputy Public Defender, for Appellant.

## OPINION

KLEINSCHMIDT, Judge.

The juvenile judge found that the Juvenile committed an assault and adjudicated him delinquent. We reverse the adjudication because we find that the juvenile judge erred in admitting statements the victim made to her mother about the details of the alleged assault.

The State produced the following evidence. On a day in August 1995, the Juvenile, the victim and the victim's boyfriend, walked to a park near the victim's house. They spent about forty-five minutes there, talking and throwing grass at each other. Afterwards, they walked to an apartment where they sat and talked. The Juvenile became upset with the victim and accused her of cheating on him. When the victim got up to leave, the Juvenile pushed her to the floor and hit her twice in the face. The victim went home and told her mother what happened, and the mother called the police. When a police officer arrived, the Juvenile and the victim's boyfriend were at the victim's apartment. The Juvenile was arrested and released to his parents.

At the delinquency hearing, the victim was originally not certain whether the apartment where the assault occurred was where the Juvenile lived, or whether it was where her boyfriend lived. Later, she repeatedly described the apartment as the Juvenile's, and said she had never been to her boyfriend's apartment. The victim gave a detailed description of the interior of the Juvenile's apartment which was completely at odds with the description later testified to by the Juvenile's mother. The victim described the living room as having a tile floor with a medium size "grayish-blue" plaid rug. The Juvenile's mother said that the room was fully carpeted with only a small rug which was not plaid. The victim said that the only furniture in the room was a solid, dark blue couch, a coffee table, and one lamp. The Juvenile's mother said that she had a couch and a love seat, both of which were covered with a plaid, earth tone material, but that she did not have a coffee table. The victim did not see the large television or the stereo that the Juvenile's mother claimed were in the living room. The victim described two "art pictures" on one of the walls. The Juvenile's mother, however, said that she had four pictures and twenty to forty plates on the walls.

Defense counsel also cross-examined the police officer about the victim's story. The officer did not recall the victim having said that she had gone to the Juvenile's apartment. Defense counsel further attacked the victim's credibility by highlighting an inconsistency in the victim's stories:

Q. [The victim] did tell you that she was pushed to the ground, is that right?

[Police officer]. Right.

Q. She didn't use the word floor, she used ground, is that right?

[Police officer]. Yes.

At the close of the State's case, defense counsel moved for a judgment of acquittal, arguing that the victim's testimony was the sole evidence against the Juvenile and that her credibility was destroyed by her inconsistent statements and inaccurate description of the Juvenile's apartment. Defense counsel insisted that "[the victim] hasn't given consistent statements throughout as to what happened." The juvenile judge denied the motion.

The State called the victim's mother as a rebuttal witness and asked her what the victim had told her about the assault. Defense counsel objected, claiming that the proffered testimony was hearsay. The State responded:

Your Honor, I'm offering this as prior consistent statement to show that at the time of the incident [the victim] told her mother that she was inside of [the Juvenile's] apartment, to rebut what the police officer said on the stand.

The judge allowed the victim's mother's testimony into evidence. The testimony was consistent with the victim's testimony at the hearing. The judge adjudicated the Juvenile delinquent, placed him on probation and ordered him to pay restitution.

■ The Juvenile argues that the judge erroneously admitted the testimony of the victim's mother because it was hearsay. The State contends that the testimony was properly admitted as a prior consistent statement. Generally, prior consistent statements made by a witness are inadmissible hearsay. *State v. Tucker,* 165 Ariz. 340, 343, 798 P.2d 1349, 1352 (App.1990). The State, however, for the first time on appeal, relies on Rule 801(d)(1)(B) of the Arizona Rules of Evidence which provides an exception to the general rule:

(d) **Statements which are not hearsay.** A statement is not hearsay if—

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the defendant of recent fabrication or improper influence or motive....

■ To be admissible under Rule 801(d)(1)(B), a prior consistent statement has to have been made *before* any motive to fabricate arose. The Supreme Court of Arizona made this absolutely clear in *State v. Martin,* 135 Ariz. 552, 663 P.2d 236 (1983). *Martin* was a prosecution for child molestation. The victim testified to numerous instances of molestation, some of which preceded her mother's marriage to the defendant. She testified that when her mother would not help her against the defendant, she told her teacher, who notified the authorities. On cross-examination, defense counsel implied that the victim had fabricated her story because the defendant had interfered with the victim's relationships with her mother and a friend. The trial court, relying on Rule 801(d)(1)(B), allowed the victim's teacher, a police officer, a detective, a psychologist and a pediatrician to testify as to what the victim had told them.

The Supreme Court of Arizona recounted the development of the law relating to the admission of prior consistent statements and concluded:

The only way to be certain that a prior consistent statement in fact controverts a charge of "recent fabrication or improper influence or motive" is to require that the statement be made at a time when the possibility that the statement was made for the express purpose of corroborating or bolstering other testimony is minimized. In other words, to be admissible, the witness must make the prior consistent statement before the existence of facts that indicate a bias arises.

135 Ariz. at 554, 663 P.2d at 238.

The court then reversed the conviction and remanded for a determination of when the motive to fabricate arose.

The Juvenile in the case before us contends that he never expressly or impliedly charged the victim with *recent* fabrication. The State, however, insists that defense counsel made such a charge when he highlighted the discrepancies between the victim's story at trial and her story to the police officer.

The essence of the Juvenile's defense was that the victim's accusation, whenever made, was a fabrication. The defense did not make an implied charge of *recent* fabrication. Rather, defense counsel highlighted inconsistencies in the victim's story in an attempt to show that the victim could not keep her story straight.

■ Developing and demonstrating inconsistencies in a witness's testimony does not necessarily amount to a charge of recent fabrication. In *State v. Zinck,* 457 A.2d 422 (Maine 1983), a victim confided in her cousin that she had been raped the previous night but did not inform the police until five days later. Defense counsel cross-examined the victim extensively regarding her past relationship with the defendant. The state, over objection, called the victim's cousin as a rebuttal witness to testify that the victim had told her about the rape. The trial court inferred that because the defense had insinuated that the contact between the victim and the defendant was consensual, a charge of recent fabrication had been made. It allowed the prior consistent statement. The Supreme Court of Maine reversed, saying,

> The failure of a trial court to clearly determine the nature of an alleged improper motive or an alleged recent fabrication may result in the admission of a prior statement which, although consistent with the witness' testimony at trial, tends neither to prove nor disprove that the challenged testimony is the result of an improper motive or of a recent fabrication.

*Zinck,* 457 A.2d at 425.

In *State v. Bargas,* 52 Wash.App. 700, 763 P.2d 470 (1988), another rape case, defense counsel attempted to point out inconsistencies in the victim's stories of the incident. The state called the investigating officer as a rebuttal witness to testify to prior consistent statements made by the victim. Over objec-

tion, the trial court allowed the testimony. The Washington Court of Appeals found that the trial court erred in admitting the officer's testimony as prior consistent statements. *Id.* 763 P.2d at 472. The court held that "[c]ross examination alone does not justify admission of prior consistent statements; the questioning must raise an inference sufficient to allow counsel to argue the witness had a reason to fabricate her story later." *Id.;see also Scarborough v. Schenck Transp. Co.,* 76 Misc.2d 1074, 352 N.Y.S.2d 825, 827 (1974) ("The word 'recent' in the term recent fabrication means that the witness is charged not with mistake or confusion but with making up a false story well after the event.").

We have found cases with facts analogous to those in the instant case that would allow the use of a prior consistent statement. *See People v. Olesch,* 143 Ill.App.3d 577, 97 Ill. Dec. 508, 492 N.E.2d 1381 (1986) and *Dearing v. State,* 100 Nev. 590, 691 P.2d 419 (1984). *State v. Martin* precludes us from following them. In any event, *Martin* represents the better view because to follow *Olesch* and *Dearing* would allow the admission of prior consistent statements to become the rule, rather than the exception.

■ We must next determine whether the error requires reversal. We will reverse unless we can say that the error was harmless beyond a reasonable doubt. *State v. Walker,* 181 Ariz. 475, 891 P.2d 942 (App. 1995). The evidence against the Juvenile was not overwhelming. The victim, whose testimony was the only evidence that the Juvenile had assaulted her, was to some degree impeached on collateral points. First, the victim gave two slightly different versions of events. Once she said she was pushed to the ground, and once she said she was pushed to the floor. While she might have been using the terms interchangeably, the difference is suggestive, especially when the site of the assault was in question. Second, and more significant, however, was her description of the Juvenile's apartment. It was completely different from the apartment as described by the Juvenile's mother. Although the discrepancy relates to a collateral

point, if the Juvenile's mother was telling the truth, there is a high probability that the victim was lying.

The victim's mother's testimony was not very important to the State's case, but the juvenile judge admitted it and presumably considered it for some purpose. We cannot say beyond a reasonable doubt that the juvenile judge would have adjudicated the Juvenile delinquent even without the mother's testimony.

The finding of delinquency and the disposition are reversed, and this case is remanded for further proceedings.

SULT, P.J., and GERBER, J., concur.